```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF MISSISSIPPI
                NORTHERN DIVISION


MICHAEL F. MACKE                                         PLAINTIFF

VS.                              CIVIL ACTION NO. 3:15CV853TSL-RHW

AMERICAN GENERAL LIFE INSURANCE
COMPANY formerly d/b/a THE
OLD LINE LIFE INSURANCE COMPANY
OF AMERICA, STANFORD BEASLEY,
AND JOHN DOES 1 THROUGH 10                              DEFENDANTS
```

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff Michael F. Macke to remand pursuant to 28 U.S.C. § 1447. Defendant American General Life Insurance Company (AGL) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

Plaintiff, who is a Mississippi citizen, commenced the present action in the Circuit Court of Hinds County, Mississippi, contending he was wrongly denied benefits under a $100,000 life insurance policy issued to his deceased wife, Regina Macke, by The Old Line Insurance Company of America (Old Line), predecessor in interest to AGL.  Mr. Macke named as defendants AGL and Stanford Beasley, the Mississippi agent from whom Regina Macke purchased the subject policy.  AGL, a nonresident insurer, timely removed the case to this court based on diversity of citizenship,

contending that Beasley, a Mississippi resident, was improperly joined in this action as plaintiff had failed to state a plausible cause of action against him in the complaint. Following removal, plaintiff timely filed the present motion to remand.

Improper Joinder Standard

To establish improper joinder, the removing party must prove either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999)). Here, there is no allegation of fraud in pleading jurisdictional facts, so the court's focus is on whether Beasley has been improperly joined. The standard for evaluating improper joinder claims is well-established: "[a]fter all disputed questions of fact and all ambiguity in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." Kling Realty Co. Inc. v. Chevron USA Inc., 306 Fed. Appx. 24, 2008 WL 5243889, at *2 (5th Cir. 2008) (quoting Carriere v. Sears Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990)). "If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no

[improper] joinder. This possibility, however, must be reasonable, not merely theoretical." <u>Travis</u>, 326 F.3d at 648.

In determining whether a plaintiff can recover against the resident defendant, the court may conduct a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant" or it may "pierce the pleadings and conduct a summary inquiry." <u>Smallwood v. Illinois Cent. R. Co.</u>, 385 F.3d 568, 573 (5th Cir. Applying these rules, the court readily concludes that plaintiff's complaint herein discloses no reasonable possibility of establishing a claim against Stanford Beasley.

<u>Analysis</u>

According to the allegations of plaintiff's complaint, in 1994, Regina Macke obtained a $100,000 life insurance policy through Beasley, a local insurance agent. The policy had a twenty-year term and named Michael Macke as beneficiary. Mr. Macke, however, was unaware of the policy's existence until after his wife's death in 2013.

Mrs. Macke paid the policy premiums for nearly nineteen years without fail. Even after she suffered a massive stroke in August 2010, which left her unable to speak, walk, drink or eat on her own and incapable of managing her own affairs – as a result of which in 2011, she was found to be totally disabled – the premiums

3

were paid via automatic draft from her checking account.  In April 2013, however, as a result of a problem with direct deposits to her checking account, there were no funds in the account to cover the premium payments.  As a result, AGL cancelled the policy without notice for nonpayment of premiums.

Mrs. Macke passed away shortly thereafter on June 23, 2013.  Plaintiff alleges that he first learned of his wife's AGL policy in October 2013, after he requested his insurance agent, Paul Byrne, to review all of his insurance policies.  Mr. Macke states that following this discovery and at his request, Byrne contacted AGL concerning the policy.  He states that notwithstanding the policy's clear provisions for reinstatement and for waiver of premium payments in the event of disability, AGL's representative advised that the policy was no longer in force and there was nothing Mr. Macke could do to reinstate the policy.

Based on these allegations, plaintiff brought the present action asserting causes of action against "defendants," including Beasley, for breach of the duty of good faith and fair dealing, economic duress, fraud and/or negligent misrepresentation, and negligence and/or gross negligence.  Clearly, however, he has no reasonable possibility of recovery against Beasley under any of these theories.

Breach of the Duty of Good Faith and Fair Dealing

Count I of the complaint undertakes to state a claim against AGL and Beasley for tortious breach of an "expressed and/or implied duty of good faith and fair dealing" based on allegations that

> An expressed and/or implied contract existed between the Plaintiff and each and every Defendant and, through their representations and/or misrepresentations breached its individual said contract as stated hereinabove.
>
> The breach of said good faith and fair dealing in every transaction, under the circumstances then and there existing, evinced conduct on the part of each and every Defendant so egregious as to amount to a separate and independent tort.

"The tort of breach of a duty of fair dealing, which emanates from the law on contracts, provides that all contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Braidfoot v. William Carey College, 793 So. 2d 642, 651 (Miss. Ct. App. 2000). Thus, for there to be a breach of the implied duty of good faith and fair dealing, there must be an existing contract and a breach of the contract by the defendant. Mullen v. Nationwide Mut. Ins. Co., Civ. Action No. 1:11cv351-KS-MTP, 2013 WL 228074, at *4 (S.D. Miss. Jan. 18, 2013) (citing Daniels v. Parker & Assoc., Inc., 99 So. 3d 797, 801 (Miss. Ct. App. 2012)). Here, the only contract identified in the complaint is the AGL life insurance policy. "Mississippi law is clear: an agent of a disclosed principal is not a party to his

5

principal's contract and cannot be liable for its breach." Rogers v. Nationwide Prop. & Cas. Ins. Co., 433 F. Supp. 2d 772, 776 (S.D. Miss. 2006) (citing Jabour v. Life Ins. Co. of N. Am., 362 F. Supp. 2d 736, 740 41 (S.D. Miss. 2005)); see also Jenkins v. Farmington Cas. Co., 979 F. Supp. 454, 457 (S.D. Miss. 1997) (noting that an agent who is not party to insurance contract is not liable for payment of contractual benefits). Likewise, "it is clear that [an agent], as a non-party to the contract ha[s] no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery." Jabour, 362 F. Supp. 2d at 741; see also USA Studio Apts. v. Phillips & Assocs., Inc., No. 2:15CV100 DPJ-FKB, 2015 WL 5712375, at *2 (S.D. Miss. Sept. 29, 2015) (holding that since defendant insurance agency "only acted within its powers as an agent for a disclosed principal, it ha[d] no implied duty of good faith and fair dealing in connection with performance of the contract and [was] not liable for bad faith."). Accordingly, since Beasley was an agent for a disclosed principal and was not a party to the insurance contract, he cannot be liable for any breach of that contract or of the duty of good faith and fair dealing implied therein.

Economic Duress

In Mississippi, a party may assert a claim of economic duress as a basis to set aside or void a contract. The Mississippi

Supreme Court has defined the elements of economic duress, stating that "to invalidate a contract on grounds of economic duress, the complaining party must establish: (1) that the dominant party threatened to do something which he had no legal right to do; and (2) that the wrongful threat overrode the volition of the victim and caused him to enter an agreement against his free will." Kelso v. McGowan, 604 So. 2d 726, 732 (Miss. 1992) (citing Duckworth v. Allis-Chalmers Mfg. Co., 247 Miss. 198, 150 So. 2d 163 (1963)).

    As the basis for his putative economic duress claim, plaintiff alleges the following:

> Plaintiff placed their trust in the integrity, skill, experience, expertise, advice, service, knowledge, competency and judgment of the each and every Defendant.
>
> The Defendants had superior knowledge, resources, information, and experience to that of the Plaintiff.
>
> The Defendant had a duty and an implied contractual covenant to act in good faith and to deal fairly with Plaintiff as the named beneficiary.
>
> The Defendants were able to and continue to wrongfully profit, to Plaintiff's detriment, through the imposition of economic duress which overcame Plaintiff's free agency.
>
> Plaintiff has been proximately damaged by Defendants' imposition of economic duress for which Plaintiff is entitled to recover as set forth hereinbelow by failing to paid the policy.

As AGL notes, plaintiff herein is not seeking to void or set aside the policy. Rather, he is attempting to *enforce* the policy by

7

seeking benefits to which he alleges he is entitled under the terms of the policy.  However, even if plaintiff were attempting to set aside the policy, he could not succeed in doing so on an economic duress theory against Beasley because he has not identified any threat by Beasley that caused plaintiff (or plaintiff's wife) to enter any agreement against his or her free will.

Fraudulent and/or Negligent Misrepresentation

Plaintiff's complaint purports to assert, in Count III, a claim for fraudulent and/or negligent misrepresentation, but his misrepresentation allegations are patently insufficient to state a claim against Beasley.  Plaintiff vaguely refers to representations and/or misrepresentations by "defendants" but he does not identify, even generally, the nature of any representation and/or misrepresentation by Beasley.  The implication of his allegations regarding AGL appears to be that AGL misrepresented to Mr. Macke, through his agent, that Mr. Macke could not avail himself of the reinstatement and/or disability waiver provisions of the policy.  But the sole factual allegation regarding Beasley is that Beasley sold the policy to Mrs. Macke. There is nothing to indicate that Beasley misrepresented anything at the time of sale, or at any other time.[1]  In the motion to

---

[1] AGL has presented an affidavit from Beasley, who states that he left the insurance business in 2001, that he has had no

8

remand, plaintiff admits that "[p]resently, neither party knows what Mr. Beasley said to Mrs. Macke as to how the disability waiver worked nor how she could reinstate the policy based on a missed payment." He speculates that his wife "would have been assured by Defendant Stanford Beasley that the policy would be followed as written and payment would be made upon her death." Yet even if this allegation were included in the complaint – which it is not – it still would not state a claim for misrepresentation upon which relief could be granted.

Mississippi law is clear: a claim of negligent or fraudulent misrepresentation "cannot be predicated on a promise relating to future actions" but rather "must be related to past or presently existing facts." Spragins v. Sunburst Bank, 605 So. 2d 777, 781 (Miss. 1992) (citing Bank of Shaw v. Posey, 573 So. 2d 1355, 1360 (Miss. 1990)). See Briggs v. State Farm Fire & Cas. Co., No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (finding no arguably reasonable basis to predict success against agent on claim for fraudulent and/or negligent misrepresentation where complaint accused him of promising—at least seventeen years before the loss—that the insurer "would fairly and accurately assess any damage and adjust any claim the

---

contact with the Mackes since the late 1990s; and that he did not speak or otherwise communicate with Mr. Macke at any time following Mrs. Macke's wife's death in 2013.  Plaintiff has not alleged, or offered any proof to the contrary.

Plaintiffs might have during the term of the contract of insurance and pay to the Plaintiffs the cost to repair or replace the Plaintiffs' home up to the limits of the policy of insurance, even if it was a total loss"; such statements were not representations of existing facts and thus could not form the basis of a misrepresentation claim); Ransom v. Allstate Ins. Co., No. CIVA 3:08CV430DPJJCS, 2008 WL 4067102, at *3 (S.D. Miss. Aug. 27, 2008) (finding that the only representation identified in complaint, that "proceeds would be promptly paid," was a promise of future performance, not of existing facts, and thus no claim was stated). It is thus apparent that there is no arguably reasonable basis to predict success against Beasley on the allegations of the complaint (or those suggested by plaintiff in his briefing on the remand motion).

Negligence and/or Gross Negligence

In his final count, for negligence and/or gross negligence, plaintiff alleges that "defendants" issued a life insurance policy "for and on behalf of the Plaintiff as beneficiary"; that after discovering the policy, he had his agent contact "defendants" to see about reinstatement or waiver of premiums; that he had "reason to believe defendants would honor their contractual obligations and policy as it was sold as a life insurance policy" and Mrs. Macke had upheld her contractual obligation of payment; and that "defendants had a duty to fully and totally represent true and

10

honest facts in all aspects of the sale of the subject policy to the Plaintiff, and the Defendants breached those duties with reckless disregard of the rights of the Plaintiff."

Although plaintiff variously alleges that "defendants" issued a policy to Mrs. Macke; that he had his agents contact "defendants" about reinstatement or waiver of premiums following his wife's death; that he had reason to believe that "defendants" would honor their obligations under the policy, the actual facts are these:  Old Line/AGL, not Beasley, issued the policy; plaintiff's agent contacted AGL, not Beasley, after plaintiff learned of the policy; and AGL, not Beasley, refused to pay his claim for benefits under the policy.  As explained supra, Beasley was not a party to the contract and had no duty to pay benefits under the policy.  Beasley's sole involvement, as affirmatively alleged by plaintiff and as disclosed by Beasley's uncontroverted affidavit, was in the sale of the policy to Mrs. Macke; and despite plaintiff's vague assertion that "defendants" breached their duty to "fully and totally represent true and honest facts in all aspects of the sale of the subject policy," he does not identify any facts that Beasley may have misrepresented, including by omission, concerning policy terms or the coverage provided.

In his rebuttal brief, plaintiff suggests that since Beasley was involved in selling the policy, then a jury could reasonably infer that he would have made representations to Mrs. Macke as to

11

the content of the policy. He notes that although Beasley acknowledges in his affidavit that he sold the policy and delivered it to Mrs. Macke, Beasley does not state what specific information he provided Mrs. Macke concerning the policy. From this, and nothing more, plaintiff concludes that a jury could find against Beasley on a theory of simple negligence or negligent misrepresentation. Clearly, however, there is no reasonable possibility a jury could find that Beasley was negligent or made misrepresentations, negligent or otherwise, based on the mere fact that he sold the subject policy.

Conclusion

Based on the foregoing, the court concludes that no reasonable possibility of recovery exists against Stanford Beasley, and it is therefore ordered that this defendant is dismissed with prejudice from this action and plaintiff's motion to remand is denied.

SO ORDERED this 7th day of January, 2016.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE